1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JARRELL MARVELL TYES,                    No.  2:12-cv-00216-TLN-KJN (HC)

12              Petitioner,

13        v.                                  FINDINGS & RECOMMENDATIONS

14   M. MCDONALD,

15              Respondent.

16

17        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2009 judgment of conviction

19   entered against him in the Sacramento County Superior Court on charges of second degree

20   murder and a firearm enhancement.  Petitioner claims that his constitutional rights were violated

21   as a result of jury instruction error at his trial and by the ineffective assistance provided by his

22   trial counsel.

23                                   FACTS[1]

24        In March 2007, defendant's younger brother, Marvell Tyes, attended a
     house party in Del Paso Heights with his stepsister, Trashawnda Richards, his

25   _____

26   [1] The facts are taken from the opinion of the California Court of Appeal for the Third
     Appellate District in People v. Tyes, No. C061994 (Oct. 13, 2010), a copy of which is attached to
27   respondent's answer to the petition (ECF No. 10, Ex. A), filed March 14, 2012, and is included in
     the record before this court as Lodged Document No. 8.

28
                                        1

friends, Ira Swanson and Tyree Knox, and several other teenagers.[2]  At some point, Marvell told Richards that he wanted to leave because "somebody was messing with him" and he was afraid of getting "jumped."  Marvell, Richards, and Swanson then left the party with a small group of partygoers and walked to an apartment complex a couple of blocks from the party.

While at the apartment complex, Marvell called defendant with Richards's phone, but was initially unable to get a hold of him. When defendant called back a short time later, Swanson grabbed the phone and told defendant that some people were following them and threatening to jump Marvell, and that defendant would be a "punk" unless he came out to the party to "back up his brother."  Swanson told defendant to "bring the 'clapper,'" which Richards understood to mean the gun.

Defendant arrived at the party about an hour later.  At this point, Marvell, Swanson, and Knox were in front of the home, outside the front gate.  A dark vehicle pulled up with its headlights off. Defendant stepped out of the passenger side of the vehicle wearing a black hooded sweatshirt and yelled to Marvell and his friends, "You guys go home. Go home right now."  Marvell, Knox and Swanson ran.

Defendant then opened fire with a .40-caliber handgun on the crowd gathered in front of the house.  After firing over a dozen rounds, defendant got back in the vehicle and quickly departed.  One of the bullets hit 16-year-old Jelisa Office in the forehead as she stood outside the party talking to one of her friends. Death was nearly instantaneous.

Defendant confessed to the murder the following morning while talking to his cousin.  Defendant explained that his brother called him the previous night and said he got jumped by some people in "the Heights," so defendant "went up there" and "shut the party down" with a .40 caliber handgun.  Defendant also explained that "he was in shock" when he realized that he had shot Office.  Defendant was arrested approximately one week later. He had been staying with his friend, Alexander Lopez, for the previous two or three nights. The .40-caliber handgun used in the shooting was recovered from underneath Lopez's bed.

Opinion (ECF No. 10, Ex. A) at 2-3.

## ANALYSIS

I.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in

---

[2] For simplicity and to avoid confusion, we will refer to defendant's brother by his first name.

1   the interpretation or application of state law.  See Wilson v. Corcoran, 131 S. Ct. 13, 16

2   (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146,

3   1149 (9th Cir. 2000).

4          Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

5   habeas corpus relief:

6              An application for a writ of habeas corpus on behalf of a person in custody
               pursuant to the judgment of a State court shall not be granted with respect to any
7              claim that was adjudicated on the merits in State court proceedings unless the
               adjudication of the claim-
8

9              (1) resulted in a decision that was contrary to, or involved an unreasonable
               application of, clearly established Federal law, as determined by the Supreme
10             Court of the United States; or

11             (2) resulted in a decision that was based on an unreasonable determination
               of the facts in light of the evidence presented in the State court proceeding.
12

13         For purposes of applying § 2254(d)(1), "clearly established federal law" consists

14   of holdings of the United States Supreme Court at the time of the state court decision.

15   Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S.

16   362, 405-06 (2000)).  Nonetheless, "circuit court precedent may be persuasive in

17   determining what law is clearly established and whether a state court applied that law

18   unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th

19   Cir. 2010)).

20         A state court decision is "contrary to" clearly established federal law if it applies a

21   rule contradicting a holding of the Supreme Court or reaches a result different from

22   Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538

23   U.S. 634, 640 (2003); Early v. Packer, 537 U.S. 3, 7 (2002).  Under the "unreasonable

24   application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state

25   court identifies the correct governing legal principle from the Supreme Court's decisions,

26   but unreasonably applies that principle to the facts of the prisoner's case.[3]  Lockyer v.

27

28   [3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

3

1    Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d

2    997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

3    simply because that court concludes in its independent judgment that the relevant state-

4    court decision applied clearly established federal law erroneously or incorrectly.  Rather,

5    that application must also be unreasonable."  Williams, 529 U.S. at 412; see also Schriro

6    v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a

7    federal habeas court, in its independent review of the legal question, is left with a 'firm

8    conviction' that the state court was 'erroneous.'").  "A state court's determination that a

9    claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could

10   disagree' on the correctness of the state court's decision."  Harrington v. Richter, 131 S.

11   Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

12   Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state

13   prisoner must show that the state court's ruling on the claim being presented in federal

14   court was so lacking in justification that there was an error well understood and

15   comprehended in existing law beyond any possibility for fairminded disagreement."

16   Richter, 131 S. Ct. at 786-87.

17        If the state court's decision does not meet the criteria set forth in § 2254(d), a

18   reviewing court must conduct a de novo review of a habeas petitioner's claims.

19   Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533

20   F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant

21   habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must

22   decide the habeas petition by considering de novo the constitutional issues raised.").

23        The court looks to the last reasoned state court decision as the basis for the state

24   court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th

25   Cir. 2004); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If the last reasoned state

26   court decision adopts or substantially incorporates the reasoning from a previous state

27   _____

28   presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,
     384 F.3d 628, 638 (9th Cir. 2004)).

1  court decision, this court may consider both decisions to ascertain the reasoning of the last

2  decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a

3  federal claim has been presented to a state court and the state court has denied relief, it

4  may be presumed that the state court adjudicated the claim on the merits in the absence of

5  any indication or state-law procedural principles to the contrary."  Richter, 131 S. Ct. at

6  784-85.  This presumption may be overcome by a showing "there is reason to think some

7  other explanation for the state court's decision is more likely."  Id. at 785 (citing Ylst v.

8  Nunnemaker, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on a

9  petitioner's claims rejects some claims but does not expressly address a federal claim, a

10  federal habeas court must presume, subject to rebuttal, that the federal claim was

11  adjudicated on the merits.  Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

12      Where the state court reaches a decision on the merits but provides no reasoning to

13  support its conclusion, a federal habeas court independently reviews the record to

14  determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at

15  860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the

16  record is not de novo review of the constitutional issue, but rather, the only method by

17  which we can determine whether a silent state court decision is objectively unreasonable."

18  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner

19  still has the burden of "showing there was no reasonable basis for the state court to deny

20  relief."  Richter, 131 S. Ct. at 784.

21      When it is clear, however, that a state court has not reached the merits of a

22  petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply

23  and a federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860;

24  Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d

25  1052, 1056 (9th Cir. 2003).

26  ////

27  ////

28  ////

1    II. Petitioner's Claims

2        A. Error in Jury Instructions

3        Petitioner's first claim is that his rights to due process and a fair trial under the

4    Fifth, Sixth, and Fourteenth Amendments were violated when the trial court allegedly

5    gave "conflicting [jury] instructions describing the relationship between murder and

6    manslaughter."  Petition (ECF No. 1) at 4.  Petitioner alleges that during his state criminal

7    trial the trial court gave the jury the "standard CALCRIM instructions on first and second

8    degree murder and manslaughter based on imperfect defense of others and provocation

9    based on heat of passion or sudden quarrel."  Id.  Petitioner argues that these instructions

10   violated his rights because they conflict with one another, "stating on the one hand [that]

11   the prosecution must prove the absence of provocation and imperfect defense of others to

12   find murder, and on the other, evidence of provocation or imperfect defense of others

13   reduces murder to manslaughter."  Id.  Because the California Supreme Court summarily

14   denied petitioner's claims on direct appeal and the record shows that petitioner has filed

15   no state habeas petitions making this argument, the last reasoned state court decision

16   rejecting this argument is the decision of the California Supreme Court for the Third

17   Appellate District on petitioner's direct appeal.  In rejecting petitioner's argument the state

18   appellate court stated as follows:

19           Defendant contends the trial court deprived him of his constitutional rights
20       to due process and a fair trial by instructing the jury with standard CALCRIM jury
         instructions on murder and manslaughter. He did not object to these instructions at
21       trial.  "Failure to object to instructional error forfeits the issue on appeal unless the
         error affects defendant's substantial rights.  [Citations.]  The question is whether
22       the error resulted in a miscarriage of justice under People v. Watson (1956) 46
         Cal.2d 818.  [Citation.]"  (People v. Anderson (2007) 152 Cal.App.4th 919, 927.)
23       We find no conceivable error, much less a miscarriage of justice.

24           At trial, defendant did not dispute that he was the shooter.  His defense
25       focused on his mental state, specifically that he acted in the heat of passion and
         believed that his actions were necessary to protect his younger brother from
26       imminent danger, thereby negating the element of malice.

27           Accordingly, the jury was appropriately instructed on the elements of
         murder and on the lesser included offense of voluntary manslaughter based on
28

6

theories of sudden quarrel or heat of passion, and imperfect self-defense or imperfect defense of another.[4]

The jury was correctly instructed on murder as follows: "The defendant is charged in Count One with murder, in violation of Penal Code Section 187.  To prove that the defendant is guilty of this crime, the People must prove that, [1] the defendant committed an act that caused the death of another person; and, [2] when the defendant acted he had a state of mind called malice aforethought; and, [3] he killed without lawful justification. [¶] There are two kinds of malice aforethought: Express malice and implied malice.  Proof of either is sufficient to establish the state of mind required for murder. [¶] The defendant acted with express malice if he lawfully intended to kill. [¶] The defendant acted with implied malice if, [1] he intentionally committed an act; [2] the natural consequences of the act were dangerous to human life; [3] at the time he acted he knew his act was dangerous to human life; and [4] he deliberately acted with conscious disregard for human life. [¶] Malice aforethought does not require hatred or ill will toward the victim.  It is a mental state that must be formed before the act that causes death is committed.  It does not require deliberation or the passage of any particular period of time.  [¶] An act causes death if the death [is] the direct, natural and probable consequence of the act and the death would not have happened without the act.  [¶] A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. [¶] In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence."

The jury was also correctly instructed on the difference between first and second degree murder, and on the doctrine of transferred intent.

The jury was then correctly instructed on voluntary manslaughter based on a theory of sudden quarrel or heat of passion: "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed someone because of a sudden quarrel or in the heat of passion.  [¶] The defendant killed someone because of a sudden quarrel or in the heat of passion if, [1] the defendant was provoked; [2] as a result of the provocation the defendant acted rashly and under the influence of intense emotion that obscured his reasoning or judgment; and [3] the provocation would have caused a person of average disposition to act rashly and without due deliberation; that is, from passion rather than from judgment.  [¶] Heat of passion does not require anger, rage or any specific emotion.  It can be any violent or intense emotion that causes a person to act without due deliberation and reflection.  [¶] In order for heat of passion to reduce a murder to voluntary manslaughter, the defendant must have acted under the direct and immediate influence of the provocation as I have defined it.  While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time.  [¶] It is not enough that the defendant simply was provoked.  The defendant is not allowed to set up his own standard of conduct.  In deciding whether the provocation was

---

[4] The jury was also instructed on self-defense and defense of another as complete defenses to murder and manslaughter.

sufficient, consider whether a person of average disposition in the same situation and knowing the same facts would have reacted from passion rather than from judgment.  [¶] If enough time has passed between the provocation and the killing for a person of average disposition to cool off and regain his or her clear reasoning and judgment, then the killing is not reduced to voluntary manslaughter on this basis."

And the jury was correctly instructed on voluntary manslaughter based on imperfect self-defense or imperfect defense of another: "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed a person because he acted in imperfect self-defense or imperfect defense of another. If you conclude the defendant acted in complete self-defense or defense of another, his action was lawful, and you must find him not guilty of any crime. The difference between complete self-defense or defense of another and imperfect self-defense or imperfect defense of another, depends on whether the defendant's belief in the need to use deadly force was reasonable.  [¶] The defendant acted in imperfect self-defense or imperfect defense of another if, [1] the defendant actually believed that he or someone else was in imminent danger of being killed or suffering great bodily injury; and [2] the defendant actually believed that the imminent use of deadly force was necessary to defend against the danger; but, [3] at least one of those beliefs was unreasonable.  [¶] Belief in future harm is not sufficient no matter how great or how likely the harm is believed to be.  In evaluating the defendant's beliefs, consider all the circumstances as they were known and appeared to the defendant.  [¶] A defendant is not required to retreat. to pursue an assailant until the danger of death has passed.  This is so even if safety could have been achieved by retreating.  [¶] Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm."

The jury was specifically instructed that, in order to convict defendant of murder, "[t]he People have the burden of proving beyond a reasonable doubt that the defendant was not acting in imperfect self-defense or imperfect defense of another," and that "defendant did not kill as the result of a sudden quarrel or in the heat of passion."

The jury was also told: "You may consider these different kinds of homicide in whatever order you wish, but I can accept a verdict of guilty of a lesser crime only if all of you have found the defendant not guilty of the greater crimes."

Defendant claims "[t]hese instructions conflict, stating on the one hand the prosecution must prove the absence of provocation and imperfect defense of others to find murder, and on the other, evidence of provocation or imperfect defense of others reduces murder to manslaughter."  According to defendant, the absence of provocation and the absence of imperfect defense of others should have been listed in the murder instruction as elements of murder.  He is mistaken.

Murder is the "unlawful killing of a human being with malice aforethought. [Citation.]  Malice may be either express or implied."  (People v. Lasko (2000) 23 Cal.4th 101, 107; Pen. Code, § 187, subd. (a).)  Express malice, i.e., intent to kill, requires a showing that the defendant either desired the death of the victim or knew to a substantial degree of certainty that death would occur.  (People v. Smith (2005) 37 Cal.4th 733, 739.) Implied malice simply requires a showing that the defendant consciously disregarded human life.  (People v. Lasko, supra, 23 Cal.4th at p. 107.)

Manslaughter is "the unlawful killing of a human being without malice." (Pen. Code, § 192.)  A killing is voluntary manslaughter when the defendant intentionally kills while having an unreasonable but good faith belief in the need to act in self-defense, or when the defendant intentionally kills while in a sudden quarrel or heat of passion.  (People v. Blakeley (2000) 23 Cal.4th 82, 88 [imperfect self-defense]; People v. Lasko, supra, 23 Cal.4th at pp. 107-108 [sudden quarrel or heat of passion].)  An unintentional killing may also be voluntary manslaughter when the defendant, acting with conscious disregard for life and the knowledge that the conduct is life endangering, either (1) "unintentionally kills while having an unreasonable but good faith belief in the need to act in self-defense," or (2) "unintentionally but unlawfully kills in a sudden quarrel or heat of passion." (People v. Genovese (2008) 168 Cal.App.4th 817, 829.)  A killing is also voluntary manslaughter when the defendant "kills in imperfect defense of another--in the actual but unreasonable belief he must defend another from imminent danger of death or great bodily injury."  (Ibid.)

In these limited circumstances, i.e., sudden quarrel or heat of passion, imperfect self-defense, and imperfect defense of another, the defendant is deemed to have acted without malice; therefore, what would otherwise be murder is reduced to voluntary manslaughter.  (See People v. Hernandez (2010) 183 Cal.App.4th 1327, 1332 [where "provocation would cause a reasonable person to react with deadly passion, the defendant is deemed to have acted without malice so as to further reduce the crime to voluntary manslaughter"]; People v. Rios (2000) 23 Cal.4th 450, 460 [certain circumstances preclude a finding of malice even though unlawful homicide was committed with intent to kill].)

However, this does not transform the absence of the foregoing circumstances into independent elements of murder.  The element of malice must be proved beyond a reasonable doubt in order to convict a defendant of murder, and the defendant must "proffer some showing on these issues sufficient to raise a reasonable doubt of his guilt of murder."  (People v. Rios, supra, 23 Cal.4th at pp. 461-462.)  Only then is the issue of adequate provocation, imperfect self-defense, or imperfect defense of another "'properly presented' in a murder case," such that "the People must prove beyond reasonable doubt that these circumstances were lacking in order to establish the murder element of malice."  (Id. at p. 462.)

Thus, the challenged instructions correctly listed malice as an element of murder, and not the absence of circumstances negating malice, and also correctly informed the jury that the prosecution was required to prove beyond a reasonable

doubt that defendant was not acting in imperfect self-defense or imperfect defense of another, and that he did not kill as the result of a sudden quarrel or in the heat of passion, in order to convict defendant of murder.

We also reject defendant's assertion that the jury was told that it was required "to determine first whether the defendant committed murder (based on [a] definition of malice that lacks all its elements)," and then allowed, but not required, to "consider 'reducing' the crime to manslaughter if provocation or imperfect defense [of others] is present."

As already indicated, the jury was specifically instructed: "You may consider these different kinds of homicide in whatever order you wish, but I can accept a verdict of guilty of a lesser crime only if all of you have found the defendant not guilty of the greater crimes." Nothing in these instructions informed the jury to come to a conclusion about murder before considering manslaughter. Moreover, the jurors were not given the option of reducing murder to manslaughter if they found that defendant acted in imperfect defense of another or as the result of a sudden quarrel or in the heat of passion. Instead, the jurors were specifically directed to acquit defendant of murder unless the prosecutor proved beyond a reasonable doubt that such circumstances did not exist.

The instruction on the completion of verdict forms did not, as defendant claims, inform the jury "that it need not consider manslaughter at all if it has concluded he was guilty of murder." Again, this instruction specifically directed the jury to "consider these different kinds of homicide in whatever order you wish."

Finally, although the prosecutor misspoke in closing argument when he told jurors they "affirmatively [had] to find [defendant] not guilty of murder before [they] could consider convicting him and returning a verdict of just manslaughter," the prosecutor also reminded jurors that, if anything he said conflicted with the jury instructions, they were obligated to disregard his comments and "go with what the judge provides for you." The instructions clearly informed the jury to "consider these different kinds of homicide in whatever order you wish," (RT 689:20-24) and that, if "the attorneys' comments on the law conflict with [the judge's] instructions, you must follow [the judge's] instructions." We must presume the jurors followed these instructions. (People v. Avila (2009) 46 Cal.4th 680, 719.)

Simply put, defendant has no basis to complain about jury instructions that accurately set forth the law with respect to the elements of murder and the lesser included offense of voluntary manslaughter.

Opinion (ECF No. 10) at 4-12.

A challenge to jury instructions does not generally state a federal constitutional

claim. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac,

1    456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).

2    Habeas corpus is unavailable for alleged error in the interpretation or application of state

3    law.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir.

4    1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  However, a "claim

5    of error based upon a right not specifically guaranteed by the Constitution may

6    nonetheless form a ground for federal habeas corpus relief where its impact so infects the

7    entire trial that the resulting conviction violates the defendant's right to due process."

8    Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d

9    1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).

10           In order to warrant federal habeas relief, a challenged jury instruction "cannot be

11   merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some

12   due process right guaranteed by the fourteenth amendment."  Prantil v. California, 843

13   F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To

14   prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire

15   trial that the resulting conviction violates due process.'"  Estelle, 502 U.S. at 72 (quoting

16   Cupp, 414 U.S. at 147); see also Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987).

17   In making its determination, this court must evaluate the challenged jury instructions "'in

18   the context of the overall charge to the jury as a component of the entire trial process.'"

19   Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).

20   Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether

21   there is a reasonable likelihood that the jury has applied the challenged instruction in a

22   way' that violates the Constitution."  Estelle, 502 U.S. at 72 (quoting Boyde v. California,

23   494 U.S. 370, 380 (1990)).  Finally, where the challenge is to a refusal or failure to give

24   an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an

25   incomplete instruction, is less likely to be prejudicial than a misstatement of the law."

26   Henderson v. Kibbe, 431 U.S. 145, 155 (1977); see also Villafuerte v. Stewart, 111 F.3d

27   616, 624 (9th Cir. 1997).

28   ////

11

1  For the reasons explained by the state appellate court and set forth above, the trial

2  court's instructions to the jury on murder and manslaughter did not "so infect" petitioner's

3  trial as to render his conviction fundamentally unfair.  <u>Estelle</u>, 502 U.S. at 72.  The state

4  court correctly interpreted state law and its rejection of this claim was entirely consistent

5  with applicable principles of United States Supreme Court jurisprudence.  Accordingly,

6  federal habeas relief as to this claim should be denied.

7      B.  <u>Ineffective Assistance of Counsel</u>

8  Petitioner's second claim for federal habeas relief is that he received ineffective

9  assistance of counsel when his trial attorney failed to object to the introduction of

10  allegedly irrelevant and prejudicial evidence "connecting petitioner to a firearm and

11  ammunition unrelated to the charged crime."  Petition (ECF No. 1) at 4.  Similar to

12  petitioner's first claim, the last reasoned state court decision rejecting this argument is the

13  decision of the California Court of Appeal for the Third Appellate District on petitioner's

14  direct appeal.  In rejecting petitioner's argument the state appellate court stated as follows:

15
16      We also disagree with defendant's remaining contention that his trial
   attorney rendered ineffective assistance by failing to object to the introduction of
   evidence connecting defendant's mother to a firearm and ammunition unrelated to
17  the charged offense.

18      A criminal defendant has the right to the assistance of counsel under both
   the Sixth Amendment to the United States Constitution and article I, section 15, of
19  the California Constitution.  (<u>People v. Ledesma</u> (1987) 43 Cal.3d 171, 215.)  This
   right "entitles the defendant not to some bare assistance but rather to effective
20  assistance.  [Citations.] Specifically, it entitles him to 'the reasonably competent
   assistance of an attorney acting as his diligent conscientious advocate.'
21  [Citations.]"  (<u>Ibid.</u>)

22
23      The burden of proving a claim of ineffective assistance of counsel is
   squarely on the defendant.  (<u>People v. Camden</u> (1976) 16 Cal.3d 808, 816.)  "'In
24  order to demonstrate ineffective assistance of counsel, a defendant must first show
   counsel's performance was "deficient" because his "representation fell below an
25  objective standard of reasonableness . . . under prevailing professional norms."
   [Citations.]  Second, he must also show prejudice flowing from counsel's
26  performance or lack thereof.  [Citation.]  Prejudice is shown when there is a
   "reasonable probability that, but for counsel's unprofessional errors, the result of
27  the proceeding would have been different.  A reasonable probability is a
   probability sufficient to undermine confidence in the outcome."'"  (<u>In re Harris</u>

28

(1993) 5 Cal.4th 813, 832-833; <u>see also</u> <u>People v. Ledesma</u>, <u>supra</u>, 43 Cal.3d at pp. 216-217; <u>accord</u>, <u>Strickland v. Washington</u> (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693].)

Here, defendant has not demonstrated deficient performance or prejudice. He complains that his trial attorney did not object to the introduction of evidence establishing defendant was arrested while in a vehicle with his mother, and that a 7.65-millimeter handgun and ammunition were found in his mother's backpack. This was not the gun used in the shooting.

While we agree with defendant that evidence of this unrelated gun and ammunition was inadmissible to prove that defendant used a different gun to murder Office, counsel's decision not to object to the introduction of this evidence may very well have been based on an informed tactical choice.  (<u>See</u> <u>People v. Anderson</u> (2001) 25 Cal.4th 543, 569.)  Indeed, in closing argument, counsel asserted that defendant's mother "probably didn't teach anybody how to make good choices, decent choices," and that defendant believed his only choice the night of the shooting was to go to the party to protect his younger brother.

In any event, it is not reasonably probable that, but for the omission, the result of the proceeding would have been different. Evidence of defendant's guilt was overwhelming.  Notwithstanding defendant's assertion to the contrary, the unrelated gun and ammunition were not "evidence of [defendant's] bad character and nothing else." This gun and ammunition belonged to defendant's mother. If anything, it bolstered defense counsel's argument that defendant's mother possessed the bad character that led defendant to believe he needed to fire wildly at a party in order to protect his brother.

For the reasons stated above, defendant has failed to establish prejudicial ineffective assistance of trial counsel.

Opinion (ECF No. 10, Ex. A) at 12-14.

The clearly established federal law for ineffective assistance of counsel claims is

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To succeed on a <u>Strickland</u> claim, a

defendant must show that (1) his counsel's performance was deficient and that (2) the

"deficient performance prejudiced the defense." <u>Id.</u> at 687.  Counsel is constitutionally

deficient if his or her representation "fell below an objective standard of reasonableness"

such that it was outside "the range of competence demanded of attorneys in criminal

cases." <u>Id.</u> at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" <u>Richter</u>,

131 S. Ct. at 787-88 (quoting <u>Strickland</u>, 466 U.S. at 687).

1        Reviewing courts must "indulge a strong presumption that counsel's conduct falls

2  within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689;

3  see also United States v. Ferreira-Alameda, 815 F.2d 1251 (9th Cir. 1986) ("Review of

4  counsel's performance is highly deferential and there is a strong presumption that

5  counsel's conduct fell within the wide range of reasonable representation.")  This

6  presumption of reasonableness means that the court must "give the attorneys the benefit of

7  the doubt," and must also "affirmatively entertain the range of possible reasons [defense]

8  counsel may have had for proceeding as they did." Cullen v. Pinholster, 131 S. Ct. 1388,

9  1407 (2011) (internal quotation marks and alterations omitted).

10        Prejudice is found where "there is a reasonable probability that, but for counsel's

11  unprofessional errors, the result of the proceeding would have been different." Strickland,

12  466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine

13  confidence in the outcome." Id.  "The likelihood of a different result must be substantial,

14  not just conceivable." Richter, 131 S. Ct. at 792 (citing Strickland, 466 U.S. at 693).  A

15  reviewing court "need not determine whether counsel's performance was deficient before

16  examining the prejudice suffered by the defendant as a result of the alleged deficiencies . .

17  . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

18  prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th

19  Cir. 2002) (quoting Strickland, 466 U.S. at 697).

20        Under AEDPA, "[t]he pivotal question is whether the state court's application of

21  the Strickland standard was unreasonable." Richter, 131 S. Ct. at 785. "[B]ecause the

22  Strickland standard is a general standard, a state court has even more latitude to

23  reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S.

24  at 123.

25        Here, the state appellate court reasonably applied existing federal law in rejecting

26  petitioner's ineffective assistance of counsel claim.  Consistent with the requirements of

27  Strickland, the state court analyzed petitioner's claim to determine whether petitioner's

28  trial counsel performed deficiently and whether that alleged deficiency prejudiced

1    petitioner's case.  The court reasonably determined that trial counsel did not perform

2    deficiently because the record supported a showing that trial counsel's decision not to

3    object to the introduction of the evidence may have been based on an informed strategic

4    choice.  Such a finding is consistent with clearly established federal law.  See Strickland,

5    466 U.S. at 689 ("Because of the difficulties inherent in making the evaluation, a court

6    must indulge a strong presumption that counsel's conduct falls within the wide range of

7    reasonable professional assistance; that is, the defendant must overcome the presumption

8    that, under the circumstances, the challenged action "might be considered sound trial

9    strategy.").

10       Furthermore, petitioner has made no showing that the result of the criminal

11   proceedings against him would have been different had his trial counsel objected to the

12   introduction of the evidence connecting defendant's mother to a firearm and ammunition

13   unrelated to the offense with which petitioner was charged.  The state appellate court

14   determined that it was not reasonably probable that, but for trial counsel's omission, the

15   result of the proceeding would have been different because evidence of defendant's guilt

16   was overwhelming.  The state appellate court's well-reasoned determination that

17   petitioner had not shown any cognizable prejudice is entirely congruent with applicable

18   principles of United States Supreme Court precedent and is grounded in a reasonable

19   determination of the facts.  Therefore, petitioner is not entitled to federal habeas relief

20   with respect to his ineffective assistance of counsel claim.

21   III.  Evidentiary Hearing

22       Petitioner requests in his traverse that the court hold an evidentiary hearing

23   regarding both of his claims so that he may further develop the record and substantiate his

24   assertions.  Traverse (ECF No. 14) at 2, 10.  In Cullen v. Pinholster, 131 S. Ct. 1388

25   (2011), the United State Supreme Court held that "review under § 2254(d)(1) is limited to

26   the record that was before the state court that adjudicated the claim on the merits."  Id. at

27   1398.  Here, the state court of appeal addressed both of petitioner's claims on the merits.

28   The court is bound to the record that was before that court.  Accordingly, petitioner's

15

1   request for an evidentiary hearing should be denied.

2                                    CONCLUSION

3           For all of the reasons set forth above, petitioner's application for a writ of habeas

4   corpus should be denied.  Pursuant to Rule 11 of the Rules Governing Section 2254 Cases

5   in the United States District Courts, "[t]he district court must issue or a deny a certificate

6   of appealability when it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C.

7   foll. § 2254.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

8   applicant has made a substantial showing of the denial of a constitutional right."  28

9   U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability indicating

10  which issues satisfy the required showing or must state the reasons why such a certificate

11  should not issue.  Fed. R. App. P. 22(b).  For the reasons set forth in these findings and

12  recommendations, petitioner has not made a substantial showing of the denial of a

13  constitutional right.  Accordingly, no certificate of appealability should issue.

14          In accordance with the above, IT IS HEREBY RECOMMENDED that:

15          1.  Petitioner's application for a writ of habeas corpus be denied;

16          2.  Petitioner's request for an evidentiary hearing be denied; and

17          3.  The district court decline to issue a certificate of appealability.

18          These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

20  fourteen days after being served with these findings and recommendations, any party may

21  file written objections with the court and serve a copy on all parties.  Such a document

22  should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

23  Any response to the objections shall be filed and served within fourteen days after service

24  of the objections.  The parties are advised that failure to file objections within the

25  ////

26  ////

27  ////

28  ////

                                            16

1  specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>,

2  951 F.2d 1153 (9th Cir. 1991).

3  Dated:  December 23, 2013

4

5  tyes0216.hc

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17